UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

SAMUEL FIGUEROA,

                            Plaintiff,

                -against-

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTION OFFICER F/N/U
SANCHEZ and NEW YORK CITY DEPARTMENT OF
CORRECTION OFFICER JANE DOE  I and NYC
DEPARTMENT OF CORRECTION OFFICERS JOHN
DOES (1-5) and JANE DOES (2-5), CAPTAIN JANE
DOE (1-5) and CAPTAIN JOHN DOE (1-5), each
individually and in their official capacities as Correction
Officers, and PRISONER HEALTH CARE SERVICES,

                        Defendants.

------------------------------------------------------------------------ x

**DECLARATION OF MARK
D. ZUCKERMAN**

07 Civ. 11333 (LAP)

       **MARK D. ZUCKERMAN,** an attorney duly admitted to practice in the State of

New York and the Southern District of New York, declares under penalty of perjury and

pursuant to 28 U.S.C. § 1746, that the following statements are true and correct:

       1.     I am Senior Counsel in the office of Michael A. Cardozo, Corporation

Counsel of the City of New York, attorney for defendants.  As such, l am familiar with the facts

stated below and submit this declaration to place the relevant information and documents on the

record in support of defendant's motion to dismiss pursuant to Rule 12(b)(6), Federal Rules of

Civil Procedure.

       2.     Annexed hereto as Exhibit A is a copy of plaintiff's complaint as it

appears in the file of the Clerk of the Court in this matter.

    3.      Annexed hereto as Exhibit B is a copy of the Civil Cover Sheet as it appears in the file of the Clerk of the Court in this matter.

Dated:  New York, New York
        April 28, 2008

                                              _____
                                              Mark D. Zuckerman

DOC # ___1___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

SAMUEL FIGUEROA,

                             Plaintiff,

                 v.

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF CORRECTION OFFICER
F/N/U SANCHEZ and NEW YORK CITY
DEPARTMENT OF CORRECTION OFFICER
JANE DOE 1 and NYC DEPARTMENT OF
CORREC TION OFFICERS JOHN DOES (1-5)
and JANE DOES (2-5), CAPTAIN JANE DOE (1-5),
and CAPTAIN JOHN DOE (1-5), each individually
and in their official capacities as Correction Officers,
and PRISONER HEALTH CARE SERVICES,

                         Defendants.
-----------------------------------------------------------------x

JUDGE PRESKA

07 CV 11333

ECF Case

**COMPLAINT
AND DEMAND FOR
JURY TRIAL**



U. S. DISTRICT COURT
FILED
DEC 14 2007
S. D. OF N.Y.

## PRELIMINARY STATEMENT

1. This is a civil rights action in which the plaintiff, SAMUEL FIGUEROA, seeks relief for the defendants' violation of the plaintiff SAMUEL FIGUEROA's rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. Section 1983 and the laws of the United States.

2. Plaintiff seeks damages, both compensatory and punitive, an award of costs, interest and attorney's fees, and such other and further relief as this Court deems just for the wrongful and unconstitutional acts of defendants.

Exhibit A

## JURISDICTION

3.     This action arises under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983, and 1988.

4.     Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a), this being an action seeking redress for the violation of the plaintiff SAMUEL FIGUEROA's constitutional and civil rights.

## VENUE

5.  Venue is proper in the United States District Court for the Southern District of New York under 28 U.S.C. Section 1391(b) in that the incident arose in the Southern District of New York.

## JURY TRIAL DEMANDED

6.     Plaintiff demands a trial by jury on each and every one of his claims as pled herein.

## PARTIES

7.     Plaintiff SAMUEL FIGUEROA is a citizen of the United States, of full age, and was at all times relevant herein a resident of the State of New York, County of the Bornx.

8.  Defendant THE CITY of NEW YORK ("CITY") is a municipal corporation organized according to the laws of the State of New York.  It is authorized by law to maintain a correction department, the New York City Department of Correction ("NYCDOC") which acts as its agent in the area of detention and corrections, including the Rikers Island Correctional Facility, and for which it is ultimately responsible.  The CITY, through its Department of Correction, was at all times relevant herein the public employer of defendants NYCDOC OFFICER F/N/U SANCHEZ, a female Correction Officer whose full name is not now known, but plaintiff intends to discover, and NYCDOC OFFICERS JANE DOE BUBBLE and JANE DOE (2-5) and NYCDOC OFFICERS JOHN DOE (1-5) and CAPTAIN JANE DOE (1-5), and CAPTAIN JOHN DOE (1-5), whose names

are not now known, but whose names plaintiff intends to discover. Upon information and belief, defendant CITY has entered into an agreement with defendant PRISONER HEALTH CARE SERVICES to indemnify PRISONER HEALTH CARE SERVICES for any claims that inmates or detainees housed in any of the jails controlled and maintained by the CITY through its Department of Correction make against PRISONER HEALTH CARE SERVICES.

9. Defendants NYCDOC OFFICER F/N/U SANCHEZ, NYCDOC OFFICER JANE DOE BUBBLE, and all JOHN and JANE DOES are and were at all times relevant herein, duly appointed and acting officers, servants, employees and agents of the New York City Department of Correction, a municipal agency of defendant CITY OF NEW YORK, and were acting under the direction and control of the New York City Department of Correction, a municipal agency of defendant CITY OF NEW YORK, and were acting pursuant to either official policy, or the custom, practice, and usage of the New York City Department of Correction, a municipal agency of defendant CITY OF NEW YORK. Defendants F/N/U SANCHEZ, JANE DOE BUBBLE and all JOHN and JANE DOES are and at all times relevant herein were officers employed by the NYCDOC and assigned to the Rikers Island Correctional Facility, specifically to the jail known as the Anna M. Kross Center ("AMKC"), 18-18 Hazen Street, East Elmhurst, New York 11370, which was previously known as, and is still sometimes referred to as, "C-95." They are sued in their individual and official capacities.

11. At all times and in all their actions described below, defendants were acting under color of state law and within the scope of their employment as correction officers, agents, servants and employees of the City of New York, or of those under contract to the City of New York, and under the City of New York's supervision, direction and control.

## FACTUAL BACKGROUND COMMON TO ALL CAUSES OF ACTION

13.   On December 13, 2004, the plaintiff SAMUEL FIGUEROA was a pre-trial detainee, awaiting the resolution of his case based on his arrest on September 14, 2004.

14.   He was incarcerated on Rikers Island in the jail known as AMKC, located at 18-18 Hazen Street, east Elmhurst, New York, 11370, in the general population, specifically in housing area 17 West Upper on the A side.

15.   Many inmates in AMKC are members of the gang known as the "Bloods," a gang well known by the NYCDOC as a violent gang with no concept of a one on one fight, but rather, a gang that attacks non-Blood inmates, usually in groups with a minimum of three, and frequently more.

16.   The NYCDOC is aware that some of the correction officers employed by the CITY are themselves Bloods or members of other gangs.

17.   The NYCDOC is aware that some of the correction officers employed by the CITY are in romantic or sexual relationships with members of the Bloods or members of other gangs.

18.   Some correction officers have allowed gang members to act as enforcers to keep order through violent means.

19.   Other gang members frequently wait until an officer sympathetic to the Bloods or other gangs is working their area so they the inmate member of the Bloods or other gang can freely pounce upon an unsuspecting inmate without fear of being punished.

20.   Many gang members control the dorm areas and the day room areas, and blatantly demand "payment" or "rent" and extort other inmates, often standing in the middle of a passageway, demanding payment in money or kind as each inmate returns from commissary.

21.   Despite actual knowledge of the danger to non-gang affiliated inmates, the

NYCDOC has failed to take reasonable measures to prevent gang violence and gang control of dormitories, the day rooms, and regularized extortion by gang members from occurring.

22. On December 13, 2004, the steady "A" and "B" officers who worked at AMKC, 17 West Upper, were not working the 7 a.m. to 3:00 p.m. shift.

23. Instead a young, fair-skinned, short, thin Hispanic female officer, whose full name is not now known, but whom plaintiff believes is defendant NEW YORK CITY DEPARTMENT OF CORRECTION OFFICER F/N/U SANCHEZ ("SANCHEZ"), was assigned as the "A" officer.

24. The substitute "B" officer, NEW YORK CITY DEPARTMENT OF CORRECTION OFFICER JANE DOE 1 ("JANE DOE 1") was a short, slightly heavy African American woman, whose name is not now known by the plaintiff, but whose name plaintiff intends to discover.

25. The "A" officer is supposed to remain in what is called the "bubble," an area enclosed in a clear plexiglass-type material.

26. All the controls, including controls to call for assistance in emergency situations, are located in the bubble, which is positioned between the two dorm areas.

27. The "B" officer is responsible for patrolling both the "A" and "B" dorm areas, and is supposed to remain outside the bubble.

28. On December 13, 2004, instead of the "B" officer patrolling the dorm areas, both the "A" and "B" officers, SANCHEZ and JANE DOE 1, remained in the bubble before, during and after the incident that is the basis of this complaint.

29. The dayroom is a lounge area with walls also made of a clear plexiglass-type material, making it visible to the officer in the bubble and others.

30.  The plaintiff SAMUEL FIGUEROA entered the A-side dayroom on December 13, 2004, at some time between approximately noon and 2:00 p.m., but definitely before the change of shift that occurs at approximately 3:00 to 4:00 p.m.

31.  The television is located in the dayroom, and the plaintiff sat down in the back of the day room to watch TV along with the inmates that were already there.

32.  After watching television for about ten minutes, a tall, African American man demanded to know why the plaintiff changed the television channel.

33.  The plaintiff told him that he did not change the channel.

34.  As the plaintiff turned to walk away after telling him that he was not even near the television, the plaintiff was punched in his jaw with tremendous force and heard a cracking sound.

35.  As he turned to try to defend himself, he was punched again in his face from another direction by a different huge African American inmate.

36.  The plaintiff saw stars as he felt his cheek smashed and eventually passed out on the floor.

37.  The plaintiff later learned from another inmate that about six of the seven to ten men that were in the room joined in a free for all, kicking and punching the plaintiff about his head, face and body.

38.  After a period of time, the plaintiff regained consciousness as he lay prone on the floor in the dayroom, with blood all around him.  He felt excruciating pain.

39.  When he tried to get up off the floor, he realized he could not because his face was stuck to his own dried blood on the floor.

40.  He tried to peel his face off the ground slowly, but the pain was too severe.

41.  The plaintiff was in agony as he continued to try to separate his face from the

floor.

42.   He ultimately had to rip it off in a quick move which again caused him to suffer more pain than he thought he could bear.

43.   The plaintiff felt dizzy and disoriented and in tremendous pain as he tried to stand up and make his way towards the bubble.

44.   The plaintiff knocked on the bubble, where SANCHEZ and JANE DOE 1 were inside and told them that he needed to go to a doctor.

45.   One of the officers, who plaintiff believes was the "B" officer, JANE DOE 1, with extreme deliberate indifference to plaintiff's obvious serious physical injuries, told the plaintiff to clean up the mess in the dayroom.

46.   In his dazed and confused state, the plaintiff actually got a mop and headed towards the dayroom.

47.   As he began to mop, he noticed several small white objects on the ground and bent to take a better look; he picked up the white objects -- they were some of his teeth.

48.   The plaintiff felt incredible pain, and was dazed and still seeing stars.

49.   He eventually just stumbled towards his bed and laid himself down.

50.   He awoke when CAPTAIN JANE DOE 1 made her night rounds and flashed a flashlight in his face and asked the plaintiff what happened to him.

51.   Being fearful of retaliation if he were to explain what really happened, the plaintiff told CAPTAIN JANE DOE 1 that he slipped in the shower.

52.   CAPTAIN JANE DOE 1 responded that he didn't slip in any shower and that she would allow him to get medical attention, but that did not happen until three days later.

53.   The following day, a correction officer came to plaintiff and told him to step

outside and the officer took photographs of the plaintiff.

54.   The plaintiff's face looked like a pumpkin it was so swelled up; his eyes were black and blue; his pain was intense.

55.   The plaintiff put in requests to go to the doctor, but he was not called.

56.   In the early hours of December 16, 2004, the plaintiff was in so much pain that he insisted that he be allowed to see a doctor.

57.   At or about 2:30 a.m. on December 16, 2004, Dr. O. Sanusi saw the plaintiff.

58.   The doctor did not order any x-rays for plaintiff, but simply prescribed Tylenol and scheduled a follow-up visit in five days.

59.   The NYCDOC supervisory hierarchy is well aware that some correction officers are themselves members of the various gangs, including the Bloods, and others are involved in romantic or sexual relationships with gang members, and actively help the gangs to assert their control by allowing vicious attacks to take place with impunity on their tours.

60.   The NYCDOC supervisory hierarchy is well aware that there is a practice and custom of some of the NYCDOC officers to intentionally ignore gang attacks, with an attitude along the lines of, "Let them kill each other; I don't care."

61.   The NYCDOC supervisory hierarchy is well aware that there is a practice and custom of NYCDOC officers not calling for aid in a violent situation because it creates greater turmoil on their unit if appropriate responses are taken and rigorous investigation were to occur.

62.   The NYCDOC has a practice and custom of virtually NEVER HAVING the NYCDOC officers that witness a violent incident fill out the Injury to Inmate Report, Form 167R.

63.   The plaintiff was viciously assaulted with punches and kicks in the day room area, an area purposely constructed to be visible to the "A" officer in the bubble for he was told, several

very long minutes, perhaps three to five minutes, with absolutely no intervention whatsoever by any NYCDOC officer.

64. No NYCDOC officer, including C.O. SANCHEZ or the "B" officer whose duty it was to safeguard the inmates, gave any verbal order to anyone to stop the attack on the plaintiff.

65. No NYCDOC officer, including C.O. SANCHEZ, the "B" officer whose duty it was to safeguard the inmates in the outside the bubble area, including the dorms and the dayroom, who was also in the bubble and not on her post, blew any whistle, either before, during, or after the group joined in the attack on the plaintiff.

66. No NYCDOC officer, including C.O. SANCHEZ, or the "B" officer whose duty it was to safeguard the inmates, activated any security alarm or any alarm at all.

67. No NYCDOC officer, including C.O. SANCHEZ, or the "B" officer whose duty it was to safeguard the inmates, took any action to prevent the attack from continuing for the unreasonably long time that it lasted on Broadway, and then continued into the open dorm area.

68. When the plaintiff was finally able to get up, he had to peal his face off the floor, which was glued to the floor with his dried blood.

69. The actions of the defendant officers and other New York City employees, agents and servants, and those under contract with New York City, acting under color of state law, violated the following clearly established and well-settled federal constitutional rights of the Plaintiff:

      (a)    Plaintiff was deprived of his Fourth Amendment right to be free from unreasonable seizures of his person;

      (b)    Plaintiff was deprived of his Fourteenth Amendment right to be free from the use of excessive or unreasonable force.

(c)     Plaintiff was deprived of his Fourteenth Amendment rights to equal protection of the laws.

(d)     Plaintiff was deprived of his Eighth Amendment right to be free from the deliberate indifference of those charged with his safety and with a duty to not maliciously, willfully, and intentionally fail to protect him from attacks by other inmates, or maliciously, willfully, and intentionally fail to take any action to intercede or call for help to intercede to prevent the continuation of an egregiously callous, escalating and violent attack on the plaintiff's body.

(e)     Plaintiff was deprived of his Eighth Amendment right to be free from the deliberate indifference of those charged with his care to his serious medical needs.

## LIABILITY OF INDIVIDUAL DEFENDANTS

70.    Upon information and belief, defendant who officers and the medical personnel set forth above, in committing the conspiracies, acts and omissions to act described above, were deliberately indifferent to and in reckless disregard of all the plaintiff's civil rights and said conspiracies, acts, and omissions to act, caused actual injury to plaintiff.

71. As a direct and proximate result of the conspiracies, acts, and omissions to act described above, the individual defendants caused plaintiff to suffer loss of rights to due process and equal protection, loss of the right to be free from cruel and unusual punishment, to be free from the deliberate indifference of those charged with his care, custody and control, to his physical safety and health, and to be free from the deliberate indifference of those charged with his care, custody and control, of his obvious and apparent need for medical and hospital treatment of serious physical injuries, and to be free from the deliberate indifference of those

-10-

charged with providing him with appropriate orthopedic follow-up medical care, to his urgent serious medical needs, as well as other deprivations of constitutional rights, pain and suffering, physical injuries to his body, mental anguish as well as other psychological injuries, including, without limitation, post traumatic stress disorder, depression, anxiety, and insomnia.

## LIABILITY OF DEFENDANT CITY

72.    Upon information and belief, all of the acts by the individual defendants were carried out with full knowledge, consent, and cooperation and under the supervisory authority of defendant City of New York.

73.    Upon information and belief, defendant City of New York by its policy-making agents, servants and employees, authorized, sanctioned and/or ratified defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

74.    Moreover, upon information and belief, the actions of the individual defendants resulted from and were taken pursuant to a de facto policy and/or well-settled and widespread custom and practice of The City of New York, which is implemented by the correction officers and other agents, servants, employees, whether employed directly by the City of New York or by an employer with a contact with said City: to passively condone violent gang activities, including ongoing extortion, particularly of vulnerable, non-gang-aligned inmates, and to cover up for correction officers who maliciously and wantonly fail to carry out their duties, and fail to take appropriate and necessary actions to prevent or stop or minimize injuries being inflicted during the course of a violent gang assault, and to cover up and refuse to identify and record correction officers who witness violent incidents, and to

encourage the cover up of correction officers with actual knowledge of violent occurrences from becoming witnesses by having officers who did not witness the events routinely fill out the incident reports rather than officers with actual knowledge of what occurred, and to circumvent potential discipline for such conduct and undermine established disciplinary channels through, among other methods, sanctioning and encouraging "a conspiracy of silence" among other members of the New York City Department of Correction and those who work within the jails that it runs, to prevent any report of the misconduct of peer and superior officers or other agents, servants, or employees, or those with contracts with the City of New York to provide services to inmates of the jails run by the New York City Department of Correction, and to attempt to minimize medical costs by failing to provide inmates with outside hospital care despite serious injury, and failing to provide appropriate follow-up orthopedic care.

75.  Upon information and belief, the existence of such _de facto_ policies and/or well-settled and widespread customs and practices has been known to supervisory and policy-making officers and officials of the Correction Department and the City of New York for a substantial period of time as well as those who contract with the City of New York.

76.  Upon information and belief, despite knowledge of such illegal _de facto_ policies and practices, the supervisory and policy-making officers and officials of the Department of Correction and The City of New York and those who contract to provide services for the City of New York have not taken adequate steps to terminate these policies and practices, have not disciplined individuals who engage in such practices, or otherwise properly trained correction officers or other agents, servants, employees, or those who contract with The City of New York to provide services to those within the jails run by the Department of

Correction, with regard to the constitutional and statutory limits on the exercise of their authority, and have instead sanctioned and ratified these policies, customs and practices through their deliberate indifference to or negligent disregard of the effect of said policies, customs and practices upon the constitutional rights of persons in the City of New York.

77.    The NYCDOC, through its senior officials at the central office and in each facility, promulgates and implements policies, including those with respect to gangs, gang control, gang extortion prevention, gang violence prevention, and procedures to follow when a violent assault occurs, including a one-on-one inmate assault, or a group of inmates upon another solitary inmate. The NYCDOC, through its senior officials at the central office and in each facility, promulgates and implements policies, including those relating to the staffing of the "A" bubble as well as policies and procedures for the "B" officer on each unit, including policies and procedures that apply to an officer temporarily covering a post for another officer.

78.    The NYCDOC, through its senior officials at the central office and in each facility, promulgates and implements policies, including those relating to procedures to follow when an inmate is seriously injured and obviously requiring immediate serious medical attention, including requiring immediate emergency hospital care and follow-up orthopedic medical care, including physical therapy.

79.    Upon information and belief, and without limiting the foregoing, the City of New York has specifically failed to terminate said practices in the following manner:

(a)    Has failed to properly train, instruct, and discipline correction officers, with regard to their response to inmate-on-inmate or group or gang violence, and not interfering with or preventing or delaying the provision of appropriate medical care;

(b) Has failed to properly train, instruct, and discipline correction officers, with regard to proper conduct while conducting an investigation regarding inmate-on-inmate or group or gang violence, and not interfering with or preventing or delaying the provision of appropriate medical care;

(c) Has failed to properly train, instruct, and discipline correction officers, with regard to treatment of inmates that are seriously physically injured and in need of medical care;

(d) Has failed to properly train, instruct, and discipline correction officers, and those under the supervision of the City of New York within the jails run by the NYCDOC with regard to responding to inmates' requests for medical care and insuring that appropriate follow-up care is obtained;

(e) Has failed to properly train, instruct, and discipline correction officers, and those under the supervision of the City of New York within the jails run by the NYCDOC with regard to promptly sending a seriously injured inmate to an outside hospital for emergency medical care;

(f) Has permitted correction officers and those under the supervision of the City of New York within the jails run by the NYCDOC, to maintain the silence and to conceal and fail to report the misconduct of other correction officers and those under the supervision of the City of New York within the jails run by the NYCDOC;

(g) Has structured procedures and standards at the Office of Chief of Department and the various departments responsible for the oversight of

behavior and discipline in such a manner that an officer's denial of the charges is ordinarily sufficient to remove the threat of any discipline or restraint upon the officer's conduct and to prevent any objective review of the officer's conduct;

(h)  Has failed to require NYCDOC officers to accept independent and objective review of inmate complaints and imposition of discipline;

(i)  Has failed to provide adequate supervision and oversight of those under contract with the City of New York to provide appropriate medical care to inmates within the confines of jails run by the NYCDOC.

(j)  Has failed to adequately address the issue of gang influence and control of housing areas, that results in, inter alia, extortion of inmates for commissary and money, known as paying "rent," intimidation and seriously threatening behavior, that frequently results in vicious gang violence, including impossible-for-a-solitary-inmate-to-defend-against gang attacks intended to cause serious physical injury and permanent scarring and frequently results in such serious injuries;

(k)  Has failed to actively cooperate with the prosecution of inmates who commit serious assaults, by engaging in the practice and custom of never having the correction officer on duty who witnessed a violent event fill out the Injury to Inmate form and acknowledge that he or she observed the incident;

(l)  Has promulgated a practice and custom of avoiding responsibility for not taking appropriate action in response to violent attacks witnessed by

correction officers, in that the policy, custom and practice is for New York City Department of Correction Officers to never acknowledge that they actually witnessed a violent assault, and to always have a different officer who did not see the incident, whether an officer on the next shift, or other officer not present at the time, fill out the Injury to Inmate form, so as to avoid any responsibility for both not taking appropriate action as a correction officer and not taking appropriate action as a witness, that is, not acknowledging that the correction officer actually did witness the violent event and could testify in a prosecution brought by the Bronx District Attorney's Office, as well as in internal N.Y.C.D.O.C. disciplinary proceedings.

80. Defendant City of New York is directly liable and responsible for the acts of defendants because it has repeatedly and knowingly failed to properly supervise, train and discipline said officers and those under the supervision of the City of New York within the jails run by the NYCDOC, and because it repeatedly and knowingly failed to enforce the rules and regulations of the New York City Department of Correction and the laws of the State of New York and the United States.

81. The knowing and repeated failure of the defendant City of New York to properly supervise, train and discipline said officers and those under the supervision of the City of New York within the jails run by the NYCDOC, actually caused the injuries to plaintiff alleged herein.

82. Upon information and belief, defendant City of New York knew or should have known that the acts alleged herein would deprive plaintiff of his rights without due

process of law, in violation of the Fourth, Eighth, and Fourteenth Amendments to the United States, including, without limitation, such rights as plaintiff's rights to freedom from unreasonable seizure, from cruel and unusual punishment, from deliberate indifference to his safety and health by virtue of the failure to protect him from inmate-on-inmate violence and gang or group violence against solitary inmates that occurred in direct view of a NYCDOC officer, agent, or employee, and the failure to intercede in any way to stop or prevent from continuing inmate-on-inmate violence and gang or group violence against solitary inmates or to call for any assistance to stop or prevent the assault from continuing, and freedom from the deliberate indifference to an inmate's serious medical needs, including his ongoing needs for appropriate follow up care, and to due process, and his right to equal protection of the laws.

### FOR A FIRST CAUSE OF ACTION

**VIOLATION OF CONSTITUTIONAL RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983 and FAILURE TO INTERCEDE TO PREVENT VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHTS (Defendant NYCDOC SANCHEZ and OFFICER JANE DOE 1)**

121.  Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-82 of this complaint, as though fully set forth herein.

128.  Defendant NYCDOC SANCHEZ and Officer JANE DOE  demonstrated deliberate indifference to the plaintiff's health and safety and caused the plaintiff to be deprived of his right to be free from gratuitous, excessive and unreasonable force, and to due process of law in that he had an opportunity to intercede on behalf of plaintiff, both prior to and during the vicious attack, and prevent the group of inmates from subjecting the plaintiff to the excessive force and violent attacks and an unlawful and unreasonable seizure of his person, but failed to do so, in violation of the plaintiff's

rights under the Fourth and Fourteenth Amendments of the Constitution of the United States and 42

U.S.C. Section 1983.

129.  As a direct and proximate result of the acts and failures to act of defendant NYCDOC

Officer SANCHEZ and JANE DOE 1,  the plaintiff SAMUEL FIGUEROA was wrongfully deprived

of his physical integrity, sustained great physical damage and excruciating pain, permanent physical

and emotional injuries, endured great mental anguish, suffering and trauma, and was otherwise

harmed, damaged and injured.

130.  Defendant NYCDOC Officer SANCHEZ and JANE DOE 1 committed the foregoing

acts intentionally, willfully and with malicious disregard for plaintiff's rights and is therefore liable

for punitive damages.

## FOR A SECOND CAUSE OF ACTION

### VIOLATION OF CONSTITUTIONAL RIGHTS UNDER THE
### FOURTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES
### CONSTITUTION AND 42 U.S.C. § 1983
### DELIBERATE INDIFFERENCE TO PLAINTIFF'S OBVIOUS MEDICAL NEEDS
### (Defendant NYCDOC SANCHEZ and JANE DOE)

131.  Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-69 of this

134.  The plaintiff clearly had a serious medical need.

135.  Defendants SANCHEZ and JANE DOE were deliberately indifferent to the plaintiff's

serious medical needs in that he had knowledge of the plaintiff's need for medical care and

intentionally refused to allow the plaintiff to obtain the urgent medical attention that he needed.

136.  Defendants SANCHEZ and JANE DOE were deliberately indifferent to the plaintiff's

serious medical needs in that he deliberately delayed the plaintiff access to medical care in such a

manner as to constitute the willful, unnecessary and wanton infliction of pain.

139.  As a direct and proximate result of the unlawful and deliberately indifferent actions and

failures to act, and conspiracies to act of defendant            , committed under color of law and

140.   Defendants SANCHEZ and JANE DOE committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiff's rights and is therefore liable for punitive damages.

## FOR A THIRD CAUSE OF ACTION

### VIOLATION OF CONSTITUTIONAL RIGHTS UNDER THE FOURTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983 DELIBERATE INDIFFERENCE TO PLAINTIFF'S OBVIOUS MEDICAL NEEDS (Defendant NYCDOC CAPTAIN JANE DOE 1)

141.   Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-69 of this complaint, as though fully set forth herein.

142.   As previously set forth hereinabove, the actions and failure to act, of defendants, constituted deliberate indifference to the plaintiff's serious medical needs.

143.   The plaintiff clearly had a serious medical need.

144.   Defendant CAPTAIN JANE DOE 1 was deliberately indifferent to the plaintiff's serious medical needs in that he had knowledge of the plaintiff's need for medical care and intentionally refused to allow the plaintiff to obtain the urgent medical attention that he needed.

148.   As a direct and proximate result of the unlawful and deliberately indifferent actions and failures to act, and conspiracies to act of defendant CAPTAIN JANE DOE 1, committed under color of law and under her authority as a captain of the NYCDOC, plaintiff suffered grievous bodily harm as described above and was wrongfully deprived of his physical integrity, sustained great physical damage and excruciating pain, permanent physical and emotional injuries, endured great mental anguish, suffering and trauma, and was otherwise harmed, damaged and injured.

149.   Defendant CAPTAIN JANE DOE 1 committed the foregoing acts intentionally,

willfully and with malicious disregard for plaintiff's rights and is therefore liable for punitive damages.

## FOR A FOURTH CAUSE OF ACTION

**VIOLATION OF CONSTITUTIONAL RIGHTS UNDER THE
FOURTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION AND 42 U.S.C. § 1983
DELIBERATE INDIFFERENCE TO PLAINTIFF'S OBVIOUS MEDICAL NEEDS
(Defendants JOHN DOE M.D./P.A. (1-2))**

150.   Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-69 of this complaint, as though fully set forth herein.

151.   The actions and failure to act and conspiracy to act and fail to act of defendants JOHN DOE M.D./PA (1-2)(medical doctor and/or physician assistant), constituted deliberate indifference to the plaintiff's serious medical needs.

152.   The plaintiff clearly had a serious medical need.

153.   Defendants JOHN DOE M.D./P.A. (1-2) were deliberately indifferent to the plaintiff's serious medical needs in that he/they had knowledge of the plaintiff's need for medical care and,

154.   Upon information and belief, the actions set forth in the preceding paragraph were taken by defendants JOHN DOE, M.D./P.A. (1-2)

155.   Upon information and belief, defendants JOHN DOE M.D./P.A. (1-2)

156.   Defendants JOHN DOE M.D./P.A. (1-2) were deliberately indifferent to the plaintiff's serious medical needs in that he/they had knowledge of the plaintiff's need for orthopedic medical follow-up care and, upon information and belief, intentionally failed to schedule the plaintiff for an medical consult and failed to allow him to have a follow-up consult, and thereby caused plaintiff to fail to obtain the necessary serious medical attention that he needed.

157.  Defendants JOHN DOE M.D./P.A. (1-2) were deliberately indifferent to the plaintiff's serious orthopedic medical needs in that he deliberately delayed and denied the plaintiff access to orthopedic medical care in such a manner as to constitute the willful, unnecessary and wanton infliction of pain.

158.  As a direct and proximate result of the unlawful and deliberately indifferent actions and failures to act, and conspiracies to act and fail to act of defendants JOHN DOE, M.D./P.A. (1-2), committed under color of law and under his and their authority as a medical provider for, upon information and belief, PRISON HEALTH SERVICES, INC., under contract with defendant CITY OF NEW YORK, plaintiff suffered grievous bodily harm due to the total absence of any follow-up orthopedic care as described above and was wrongfully deprived of his physical integrity and his chances for improvement of his medical condition, sustained great and further physical damage and additional pain and suffering, permanent physical and emotional injuries, endured great mental anguish, suffering and trauma, and was otherwise harmed, damaged and injured.

159.  Defendants JOHN DOE, M.D./P.A. (1-2) committed the foregoing acts intentionally, willfully and with malicious disregard for plaintiff's rights and are therefore liable for punitive damages.

### FOR A TENTH CAUSE OF ACTION

### VIOLATION OF CONSTITUTIONAL RIGHTS UNDER THE FOURTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983 DELIBERATE INDIFFERENCE TO PLAINTIFF'S OBVIOUS MEDICAL NEEDS (Defendants THE CITY OF NEW YORK)

160.  Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-69 of this complaint, as though fully set forth herein.

161. The actions and failure to act of the supervisors, as well as the medical personnel of the PRISON HEALTH SERVICES, INC., including medical doctors, physician assistants and administrative staff, during which time he failed to receive any follow-up care regarding the fractures of his face and serious related injuries, including but not limited to any neurological treatment or physical or occupational therapy, constituted deliberate indifference to the plaintiff's serious orthopedic medical needs, for which the defendant CITY OF NEW YORK is liable to the plaintiff.

162. The actions and failure to act of the supervisors and other personnel of THE NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE responsible for the oversight of the work of the employees of PRISON HEALTH SERVICES, INC., the corporation with whom the defendant THE CITY OF NEW YORK entered into a contractual relationship for the provision of medical and health services to the inmates in the custody of the NYCDOC, from the period of time that the plaintiff was in custody until his release, during which time the plaintiff failed to receive any follow-up orthopedic care regarding his facial fractures at Bellevue, or any neurological care, including but not limited to no physical or occupational therapy, constituted deliberate indifference to the plaintiff's serious orthopedic and brain protective medical needs

163. As a direct and proximate result of the unlawful and deliberately indifferent actions and failures to act of the agents, servants, employees, and persons under contract with the City of New York, and the policies and practices of the NYCDOC and their agents, servants, employees, and persons under contract with the City of New York, committed under color of law, plaintiff suffered grievous bodily harm as described above and was wrongfully deprived of his physical integrity and his chances for improvement of his medical condition, sustained great and further physical damage and additional pain and suffering, permanent physical and emotional injuries, endured great mental anguish, suffering and trauma, and was otherwise harmed, damaged and injured.

WHEREFORE, plaintiff SAMUEL FIGUEROA, demands the following relief jointly and severally against all of the defendants:

A.    Compensatory damages;
B.    Punitive and exemplary damages;
C.    The convening and empanelling of a jury to consider the merits of the claims herein;
D.    Costs and interest and attorney's fees;
E.    Such other and further relief as appears reasonable and just.

Dated: New York, New York
       December 12, 2007

Respectfully,

JOANNE M. DWYER  [JD-9852]
Attorney for the Plaintiff
SAMUEL FIGUEROA
225 Broadway, 41st Floor
New York, New York 10007
(212) 233-0591

JUDGE PRESKA

JS 44C/SDNY
REV. 12/2005

CIVIL COVER SHEET

# 07 CV 11333

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**PLAINTIFFS**
SAMUEL FIGUEROA

**DEFENDANTS**
THE CITY OF NEW YORK, NYC DOC OFFICER F/N/U SANCHEZ and JANE DOE 1, AND JOHN DOES 1-5 AND JANE DOES 2-5 CAPTAIN JANE DOE 1, et al.

**ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Joanne M. Dwyer, 225 Broadway, 41st Floor NY, NY 10007   (212) 233-0591

**ATTORNEYS (IF KNOWN)**
New York City Law Department
100 Church Street, NY, NY 10007

DEC 14 2007

**CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)
42 U.S.C. 1983 - civil rights

Has this or a similar case been previously filed in SDNY at any time? No [x] Yes? [ ] Judge Previously Assigned

If yes, was this case Vol. [ ] Invol. [ ] Dismissed. No [ ] Yes [ ] If yes, give date _____ & Case No. _____

*(PLACE AN [x] IN ONE BOX ONLY)*    NATURE OF SUIT

ACTIONS UNDER STATUTES

**TORTS**

**CONTRACT**
[ ] 110 INSURANCE
[ ] 120 MARINE
[ ] 130 MILLER ACT
[ ] 140 NEGOTIABLE INSTRUMENT
[ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151 MEDICARE ACT
[ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
[ ] 153 RECOVERY OF OVERPAYMENT OF VETERAN'S BENEFITS
[ ] 160 STOCKHOLDERS SUITS
[ ] 190 OTHER CONTRACT
[ ] 195 CONTRACT PRODUCT LIABILITY
[ ] 196 FRANCHISE

**PERSONAL INJURY**
[ ] 310 AIRPLANE
[ ] 315 AIRPLANE PRODUCT LIABILITY
[ ] 320 ASSAULT, LIBEL & SLANDER
[ ] 330 FEDERAL EMPLOYERS' LIABILITY
[ ] 340 MARINE
[ ] 345 MARINE PRODUCT LIABILITY
[ ] 350 MOTOR VEHICLE
[ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360 OTHER PERSONAL INJURY

**PERSONAL INJURY**
[ ] 362 PERSONAL INJURY - MED MALPRACTICE
[ ] 365 PERSONAL INJURY PRODUCT LIABILITY
[ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

**PERSONAL PROPERTY**
[ ] 370 OTHER FRAUD
[ ] 371 TRUTH IN LENDING
[ ] 380 OTHER PERSONAL PROPERTY DAMAGE
[ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**FORFEITURE/PENALTY**
[ ] 610 AGRICULTURE
[ ] 620 FOOD & DRUG
[ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 630 LIQUOR LAWS
[ ] 640 RR & TRUCK
[ ] 650 AIRLINE REGS
[ ] 660 OCCUPATIONAL SAFETY/HEALTH
[ ] 690 OTHER

**LABOR**
[ ] 710 FAIR LABOR STANDARDS ACT
[ ] 720 LABOR/MGMT RELATIONS
[ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
[ ] 740 RAILWAY LABOR ACT
[ ] 790 OTHER LABOR LITIGATION
[ ] 791 EMPL RET INC SECURITY ACT

**BANKRUPTCY**
[ ] 422 APPEAL 28 USC 158
[ ] 423 WITHDRAWAL 28 USC 157

**PROPERTY RIGHTS**
[ ] 820 COPYRIGHTS
[ ] 830 PATENT
[ ] 840 TRADEMARK

**SOCIAL SECURITY**
[ ] 861 MIA (1395FF)
[ ] 862 BLACK LUNG (923)
[ ] 863 DIWC (405(g))
[ ] 863 DIWW (405(g))
[ ] 864 SSID TITLE XVI
[ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
[ ] 870 TAXES
[ ] 871 IRS-THIRD PARTY 20 USC 7609

**OTHER STATUTES**
[ ] 400 STATE REAPPORTIONMENT
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE/ICC RATES/ETC
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480 CONSUMER CREDIT
[ ] 490 CABLE/SATELLITE TV
[ ] 810 SELECTIVE SERVICE
[ ] 850 SECURITIES/COMMODITIES/EXCHANGE
[ ] 875 CUSTOMER CHALLENGE 12 USC 3410
[ ] 891 AGRICULTURE ACTS
[ ] 892 ECONOMIC STABILIZATION ACT
[ ] 893 ENVIRONMENTAL MATTERS
[ ] 894 ENERGY ALLOCATION ACT
[ ] 895 FREEDOM OF INFORMATION ACT
[ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
[ ] 950 CONSTITUTIONALITY OF STATE STATUTES
[ ] 890 OTHER STATUTORY ACTIONS

**ACTIONS UNDER STATUTES**

**REAL PROPERTY**
[ ] 210 LAND CONDEMNATION
[ ] 220 FORECLOSURE
[ ] 230 RENT LEASE & EJECTMENT
[ ] 240 TORTS TO LAND
[ ] 245 TORT PRODUCT LIABILITY
[ ] 290 ALL OTHER REAL PROPERTY

**CIVIL RIGHTS**
[ ] 441 VOTING
[ ] 442 EMPLOYMENT
[ ] 443 HOUSING ACCOMMODATIONS
[ ] 444 WELFARE
[ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
[ ] 446 AMERICANS WITH DISABILITIES -OTHER
[x] 440 OTHER CIVIL RIGHTS

**PRISONER PETITIONS**
[ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255
[ ] 530 HABEAS CORPUS
[ ] 535 DEATH PENALTY
[ ] 540 MANDAMUS & OTHER
[ ] 550 CIVIL RIGHTS
[ ] 555 PRISON CONDITION

*Check if demanded in complaint:*

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $_____ OTHER _____

*Check YES only if demanded in complaint*
JURY DEMAND: [x] YES [ ] NO

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.? IF SO, STATE:

JUDGE _____ DOCKET NUMBER _____

NOTE: Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)